IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

PAUL EDWARD MASHNI; KIAWAH RIVER )
FARMS, LLC; and KRF XSL, LLC;              )
                                           )
              Plaintiffs,                  )
                                           )          No. 2:20-cv-4235-DCN
        vs.                                )
                                           )          **ORDER**
U.S. ARMY CORPS OF ENGINEERS and           )
LT. COLONEL RACHEL HONDERD, *in her*       )
*official capacity as District Engineer*,  )
                                           )
              Defendants.                  )
_____ )

The following matter is before the court on defendants U.S. Army Corps of

Engineers ("the Corps") and Lt. Colonel Rachel Honderd's (collectively, "defendants")

motion to dismiss, ECF No. 6.  For the reasons set forth below, the court grants the

motion and dismisses the action.

## I.  BACKGROUND

Before reciting the facts of the case, the court outlines the relevant statutory and

regulatory landscape to set the backdrop necessary for understanding this dispute.  The

story begins with the Clean Water Act ("CWA").  The CWA establishes a comprehensive

statutory scheme designed to "restore and maintain the chemical, physical, and biological

integrity of the Nation's waters." 33 U.S.C. § 1251(a).  To that end, the CWA prohibits

the discharge of any pollutant, including dredged or fill material, into navigable waters,

unless the discharges are made pursuant to statutorily authorized permits.  33 U.S.C.

§ 1311(a) (emphasis added).  The term "navigable waters" encompasses "the waters of

the United States" (or "WOTUS"), a phrase that the regulations define to include both

1

traditionally navigable waters—like lakes and ponds—and some waters that are not practically navigable—like certain wetlands.  33 U.S.C. § 1362(7); see also 33 C.F.R. § 328.3(a).  The contours of the phrase "waters of the United States" and the extent of its constitutionality authorized reach have, to put it mildly, been the source of much confusion and controversy.  See Rapanos v. United States, 547 U.S. 715 (2006) (plurality opinion); see also Sackett v. E.P.A., 566 U.S. 120, 132 (2012) ("The reach of the Clean Water Act is notoriously unclear.").  Current jurisprudence reveals that the CWA's constitutional grasp extends to waters falling somewhere between "transitory puddles or ephemeral flows of water" on the shallow end, Rapanos, 547 U.S. at 733, and "traditionally navigable waters" on the deep end, Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers, 531 U.S. 159, 190 (2001) (J. Stevens, dissenting).  That constitution-based confusion has only been compounded by differing regulations promulgated by changing administrations.  Suffice it to say, a landowner, even if well-versed in cannons of statutory interpretation and armed with a legion of constitutional law professors, would have a difficult time discerning whether water on his or her property is subject to federal regulation under the CWA.

Recognizing that "it is often difficult to determine whether a particular piece of property contains waters of the United States," U.S. Army Corps of Engineers v. Hawkes Co., 136 S. Ct. 1807, 1812 (2016), the regulations authorize the Corps to issue landowners "jurisdictional determinations" ("JDs"), which the regulations define as "written Corps determination[s] that a wetland and/or waterbody is subject to regulatory jurisdiction under . . .  the Clean Water Act," 33 C.F.R. § 331.2. As the Supreme Court has explained, JDs "come in two varieties: 'preliminary' and 'approved.'"  Hawkes Co.,

136 S. Ct. at 1812. "While preliminary JDs merely advise a property owner 'that there may be waters of the United States on a parcel,' approved JDs definitively 'stat[e] the presence or absence' of such waters." Id. (quoting 33 C.F.R. § 331.2). Once issued, an approved JD is binding for five years on the Corps and constitutes a "final agency action" for the purposes of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, et seq. Id. (citing 33 C.F.R. § 320.1(a)(6)). A preliminary JD, on the other hand, is neither binding nor final. Id.

In 2016, the Corps issued Regulatory Guidance Letter No. 16-10 (the "2016 RGL") to "provide guidance to the field and the regulated public on when it may be appropriate to issue an [approved] JD as opposed to a [preliminary] JD, or when it may be appropriate not to prepare any JD whatsoever." ECF No. 1-2 at 7. The letter explains:

> The regulations implementing the CWA and [the Rivers and Harbors Act] introduced the concept of JDs when they " . . . authorized its district engineers to issue formal determinations of the applicability of the [CWA] to . . . tracts of land." 33 C.F.R. 320.1 (a)(6). The use of such determinations was not addressed by either statute, and the regulations make their use discretionary and do not create a right to a JD. The regulations authorize their use as a service to the public, and the Corps has developed a practice of providing JDs when requested, and in appropriate circumstances.

Id. at 8 (emphasis added) (ellipses in original).

With the stage set, the court turns to the facts. Plaintiff Paul Edward Mashni ("Mashni") owns several multi-acre parcels of land on Johns Island, South Carolina, near the Stono and Kiawah Rivers. The parties refer to the parcels relevant to this action as the "Legareville Site." Plaintiffs Kiawah River Farms, LLC and KRF XSL, LLC (together with Mashni, "plaintiffs") are entities owned and operated by Mashni that co-own the Legareville Site along with him. According to plaintiffs, Mashni uses the

Legareville Site as a farm for his horses.  In 2017, the Corps sent Mashni a letter stating its preliminary view that his properties house "waters of the United States" subject to CWA jurisdiction.  On June 22, 2018, plaintiff KRF XSL, LLC, joined by two of Mashni's other owned entities, sought judicial review of the Corps' letter in this court. Finish Line Foundation v. U.S. Army Corps of Engineers, No. 2:18-cv-1727-DCN.  On October 18, 2018, the court granted the Corps' motion to dismiss, finding that the plaintiffs there failed to state a viable claim under the APA because the Corps' letter did not constitute a "final agency action."  Id., ECF No. 17.  On August 17, 2018, as a result of the Corps' referral of its CWA investigation to the U.S. Attorney's Office, the United States filed a CWA enforcement action against Mashni and eight of his affiliated companies, including Kiawah River Farms, LLC and KRF XSL, LLC, United States v. Mashni, No. 2:18-cv-2288-DCN (the "Enforcement Action").

Plaintiffs claim that they still face uncertainty as to whether certain water on the Legareville Site falls under the umbrella of "waters of the United States," such that it is subject to CWA regulation.  Plaintiffs note that they are "particularly concerned about the potential scope of CWA jurisdiction because of" the pending Enforcement Action against them.  ECF No. 7 at 9.  On September 14, 2020, a consultant working for plaintiffs sent a letter to the Corps requesting an approved JD for the Legareville Site.  Hearing nothing after three weeks, plaintiffs' consultant inquired about the status of his request on October 6, 2020 and provided the Corps with his own expert report, which he prepared in conjunction with the Enforcement Action.  On October 13, 2020, the Corps responded, informing the consultant that he needed to fill out a formal JD request form and providing him with a copy of the 2016 RGL.  ECF No. 1-2.  Plaintiffs' consultant submitted his

formal JD application with the Corps on October 16, 2020.  On October 27, 2020, the

Corps deferred action on the application via letter.  ECF No. 1-4.  The Corps explained:

> As you know, fourteen of the fifteen parcels listed in your JD form, and
> comprising the "Kiawah River Farms Property," are associated with an
> active [CWA] enforcement matter in the U.S. District Court for the District
> of South Carolina, United States v. Mashni et al., Civil Case No. 2:18-cv-
> 02288-DCN.  It is my understanding that you have been identified, and
> continue to serve, as Defendants' expert in the litigation, and, furthermore,
> that you have submitted the JD form on behalf of Kiawah River Farms, LLC
> and KRF XSL, LLC, both of whom are Defendants in the above referenced
> CWA enforcement matter.
>
> [. . .]
>
> After a preliminary review of your JD form on behalf of [plaintiffs],
> including its scope, the Corps believes it would be inappropriate under the
> circumstances of this case to issue an [approved] JD to [plaintiffs] at this
> time.
>
> [. . .]
>
> Deferring action on your request is also consistent with the [Corps'] need
> to prioritize its resources.  It would not be an efficient use of the [Corps']
> resources to process your request at this time, when the JD form indicates
> that there are no immediate plans to conduct activities requiring a permit.

Id. at 1–2.

Plaintiffs now challenge the Corps' decision declining to issue an approved JD at

this time.  On December 7, 2020, plaintiffs filed this action seeking judicial review and

injunctive relief pursuant to the APA and alternatively seeking a writ of mandamus

pursuant to the All Writs Act, 28 U.S.C. § 1651.  ECF No. 1, Compl.  Specifically,

plaintiffs bring four claims: (1) "Violation of APA – Arbitrary and Capricious Denial of

Approved JD," (2) "Violation of APA – Unreasonable Delay in Processing Request for

Approved JD," (3) "Violation of the APA – Unlawful Withholding of Agency Action,"

and (4) "Mandamus."  Id.  Defendants filed a motion to dismiss on February 12, 2021.

ECF No. 6.  Plaintiffs responded in opposition on February 26, 2021, ECF No. 7, and defendants replied on March 10, 2021, ECF No. 11.  The court held a hearing on the matter on April 15, 2021.  As such, the motion is ripe for review.

## II.  STANDARD

### A.  Motion to Dismiss under 12(b)(1)

Fed. R. Civ. P. 12(b)(1) authorizes a defendant to challenge the court's subject matter jurisdiction in one of two ways: he may contend that the complaint fails to allege facts upon which subject matter jurisdiction can rest or that the jurisdictional allegations in the complaint are untrue.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  When the defendant levies a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (quoting Adams, 697 F.2d at 1219).  Accordingly, the court must take the facts alleged in the complaint as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Id.  Ultimately, the plaintiff bears the burden of establishing federal subject matter jurisdiction when challenged by a motion under 12(b)(1). Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

### B.  Motion to Dismiss under 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III.  DISCUSSION

Defendants seek dismissal on all four of plaintiffs' claims. With respect to plaintiffs' first claim, which seeks judicial review of the Corps' decision, defendants argue that the decision does not constitute a "final agency action" cognizable on review under the APA. With respect to plaintiffs' second and third claims, which seek to compel the Corps to issue a JD, defendants argue that the issuance of a JD is a discretionary act and thus cannot be compelled under the APA. Finally, with respect to plaintiffs' final claim seeking a writ of mandamus, defendants contend that a writ cannot issue in the absence of a clear legal duty and an indisputable right. The court addresses each cause of action and corresponding ground for dismissal in turn, agreeing with defendants across the board and therefore granting the motion to dismiss in full.

### A.  Count 1 – Final Agency Action

Plaintiffs' first cause of action seeks judicial review of the Corps' decision not to issue an approved JD, alleging that the deferral constitutes an "arbitrary and capricious"

agency decision.  Compl. ¶ 92.  In their motion to dismiss, defendants argue that the

Corps' decision is not subject to judicial review under the APA because it is not a "final

agency action."  The court agrees with defendants.

The APA authorizes judicial review of "final agency action[s] for which there is

no other adequate remedy[.]"  5 U.S.C. § 704.  A district court must set aside an agency

decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  Id. at § 706(2)(A).  The Supreme Court has established two

conditions that an agency action must satisfy to be considered "final."  "First, the action

must mark the consummation of the agency's decisionmaking process—it must not be of

a merely tentative or interlocutory nature."  Bennett v. Spear, 520 U.S. 154, 178 (1997)

(internal citations and quotation marks omitted).  With respect to this first requirement,

courts have advised that "[c]onsummation of a process does not occur where the process

allows for additional events that can alter preliminary decisions."  Versata Dev. Corp. v.

Rea, 959 F. Supp. 2d 912, 924 (E.D. Va. 2013), aff'd sub nom. Versata Dev. Grp., Inc. v.

Lee, 793 F.3d 1352 (Fed. Cir. 2015).  "[S]econd, the action must be one by which rights

or obligations have been determined or from which legal consequences will flow."

Bennett, 520 U.S. at 178.  In determining whether an agency action satisfies this

condition, the court should consider "whether the action had a direct impact on the day-

to-day business of" the plaintiff.  Nat. Res. Def. Council, Inc. v. U.S. E.P.A., 16 F.3d

1395, 1407 (4th Cir. 1993).  Put differently, for a decision to constitute a final agency

decision, it "must have a direct and immediate effect on the party's legal rights."

Versata, 959 F. Supp. 2d at 924 (quoting Wollman v. Geren, 603 F. Supp. 2d 879, 884

(E.D. Va. 2009)).

The Supreme Court has explained the good sense of limiting judicial review under the APA to only those agency actions that are final: "its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Lab'ys v. Gardner, 387 U.S. 136, 148–49 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). Premature court intervention into agency affairs would serve only to "interfere[] with the proper functioning of the agency and [] burden [] the courts." F.T.C. v. Standard Oil Co. of California, 449 U.S. 232, 242 (1980).

The Corps' decision declining to issue an approved JD fails on both prongs of the finality test. First, the Corps' decision clearly does not "mark the consummation of the agency's decisionmaking process." Bennett, 520 U.S. at 178. As the Corps' deferral letter makes clear, the Corps is "deferring action on" plaintiffs' request for an approved JD until the Enforcement Action is resolved. ECF No. 1-4 at 2. It is clear that the decision is just that—a deferral, not a conclusion. It does not represent the end of the administrative process because it "allows for additional events that can alter" the preliminary decision. Versata, 959 F. Supp. 2d at 924. The regulations make clear that an approved JD is a "final agency action" under the APA and that a preliminary JD is not. 33 C.F.R. § 320.1(a)(6). Here, plaintiffs are even a step removed from the issuance of a preliminary JD because the Corps has not issued any JD at all. After the resolution of the Enforcement Action, the Corps may resolve to take action on the request and issue an

approved JD.  But until it does so, the Corps has not consummated the agency process by rendering a final decision.

Even more evident, the Corps' decision to defer plaintiffs' request is not an action "by which rights or obligations have been determined or from which legal consequences will flow."  Bennett, 520 U.S. at 178.  Plaintiffs' request for an approved JD is not a request to obtain rights; it is a request for a determination of rights.  As the court discusses in greater depth below, there is no statutory or regulatory right to have one's rights determined under the CWA.  Fundamentally, then, the Corps' deferral of plaintiffs' request does not constitute a determination of rights but a decision deferring a determination of rights.  As such, the decision itself carries with it neither rights nor legal consequences.  In other words, plaintiffs' rights prior to the deferral remained unchanged when the Corps issued its deferral, meaning that it had no "direct and immediate effect on [their] legal rights."  Versata, 959 F. Supp. 2d at 924.  As one court has stated, "In the clear absence of an approved JD, plaintiffs cannot claim judicial review of a final agency action under the APA."  Rauseo v. Army Corps of Engineers, 368 F. Supp. 3d 202, 208 (D. Mass. 2019).

Opposing dismissal on this front, plaintiffs advance two arguments.  First, they contend that approved JDs are final agency actions subject to judicial review under the APA.  Of course, plaintiffs are correct.  The regulations clearly provide, and the Supreme Court has confirmed, that approved JDs "constitute a Corps final agency action."  33 C.F.R. § 320.1(a)(6); Hawkes Co., 136 S. Ct. at 1812.  The apparent problem with

plaintiffs' argument is that the Corps has issued no approved JD here.[1]  Instead, plaintiffs

seek review of the Corps' decision to defer issuing a JD.  As the court discussed above,

that decision lacks the finality necessary for APA review.[2]  Second, plaintiffs argue that

the Corps' deferral is akin to a final agency action as a "de facto" denial and is thus

cognizable upon judicial review under § 706(2)(A).  ECF No. 7 at 16.  Specifically,

plaintiffs contend that "an agency cannot preclude judicial review by casting its decision

in the form of inaction rather than in the form of an order denying relief."  ECF No. 7 at

17 (citing Env't Def. Fund, Inc. v. Hardin, 428 F.2d 1093, 1099 (D.C. Cir. 1970)).  But

nothing authorizes the court to conduct judicial review in the absence of an agency

decision.  As the D.C. Circuit explained in Hardin, the remedy for administrative inaction

is for the court to compel administrative action under § 706(1), not conduct a review of

the non-decision under § 706(2)(A).[3]  428 F.2d 1099 n.29 ("The [APA] requires every

agency 'within a reasonable time to proceed to conclude any matter presented to it,' 5

U.S.C. § 555(b), and provides that the reviewing court shall 'compel agency action

unlawfully withheld or unreasonably delayed.' 5 U.S.C. § 706(1).") (internal alterations

omitted).  Here, plaintiffs seek to remedy inaction with judicial review, a path for which

---

[1] Plaintiffs' accompanying citation to Deerfield Plantation Phase II-B Prop. Owners Ass'n, Inc. v. U.S. Army Corps of Engineers is likewise inapposite.  801 F. Supp. 2d 446, 459 (D.S.C. 2011), aff'd sub nom. 501 F. App'x 268 (4th Cir. 2012). There, the plaintiff sought review of an approved JD issued by the Corps.  Glaringly absent from plaintiffs' argument here is the Corps' issuance of a JD.

[2] Plaintiffs also contend that whether the Corps' decision constitutes a final agency decision is "a factual issue," making summary judgment inappropriate.  Not so. The determination of whether an agency decision constitutes a "final agency action" is clearly a question of law within the sole purview of the court.  See Bennett, 520 U.S. at 178.

[3] Logically, of course, the court cannot review an agency action to determine whether it is arbitrary or capricious when there has been no agency action.

the law does not provide.  Accordingly, plaintiffs' argument is more in line with their

second and third causes of action, which seek to compel the Corps to issue a JD under

§ 706(1).  Thus, the court addresses it below.[4]  Because the Corps' decision to defer

issuing an approved JD does not constitute a final agency decision cognizable upon

judicial review, the court grants the motion to dismiss plaintiffs' first cause of action.

### B.  Counts 2 and 3 – Legally Required Action

Plaintiffs' second and third causes of action assert that the Corps has

unreasonably delayed and unlawfully withheld the requested JD, asking the court to

compel the Corps to issue one.  Defendants contend that these claims must be dismissed

"because Plaintiffs seek to compel a purely discretionary action by the Corps that is

outside the scope of judicial review under 5 U.S.C. § 706(1)."  ECF No. 6 at 15–16.  In

response, plaintiffs argue that the Corps "has a nondiscretionary duty" to issue JDs upon

request.  Again, the court agrees with defendants.

The APA authorizes a reviewing court to "compel agency action unlawfully

withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The Supreme Court has made

clear that "the only agency action that can be compelled under the APA is action

legally required."  Norton v. S. Utah Wilderness All., 542 U.S. 55, 63 (2004) (emphasis

in original).  "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that

an agency failed to take a discrete agency action that it is required to take."  Id. at 64

---

[4] In support of this argument, plaintiffs also rely on a case from this court: Long
Pt. Cooper Inv. Grp. LLC v. Town of Mount Pleasant, 2019 WL 1517114, at *2 (D.S.C.
Apr. 8, 2019).  But that case has nothing to do with the APA or final agency decisions.
Instead, the court there considered whether a town's denial of certain petitions for land
use satisfied certain local town ordinances under the plaintiffs' declaratory judgment
claim.  Id. at *4.  In other words, Long Pt. provides plaintiffs no support for their
inventive theory.

(emphasis in original).  The Fourth Circuit recently confirmed that "where an agency

is not required to do something, we cannot compel the agency to act—let alone to act

faster."  Gonzalez v. Cuccinelli, 985 F.3d 357, 366 (4th Cir. 2021) (citing Norton, 542

U.S. at 63) (emphasis in original).

Here, there exists no law or regulation that imposes upon the Corps a duty to issue

a JD upon a party's request.  The CWA is silent on the issue of JDs.  And the regulations

promulgated thereunder "authorize" the Corps to issue JDs but nowhere require it to do

so.  See 33 C.F.R. §§ 320.1(a)(6) ("The Corps has authorized its district engineers to

issue formal determinations concerning the applicability of the Clean Water Act . . . .").

In fact, regulatory guidance explicitly provides that the Corps' decision to issue a JD is

discretionary.  The 2016 RGL states that "[t]he Corps has long provided JDs as a public

service" and specifically notes that the Corps "does not limit the discretion afforded a

district engineer by the regulations to ultimately determine, consistent with the guidance

below, how to respond to a request for a JD."  ECF No. 1-2 at 7.  The letter continues:

> The regulations implementing the CWA and [the Rivers and Harbors Act]
> introduced the concept of JDs when they " . . . authorized its district
> engineers to issue formal determinations of the applicability of the [CWA]
> to . . . tracts of land."  33 C.F.R. 320.1 (a)(6).  The use of such
> determinations was not addressed by either statute, and the regulations
> make their use discretionary and do not create a right to a JD.  The
> regulations authorize their use as a service to the public, and the Corps has
> developed a practice of providing JDs when requested, and in appropriate
> circumstances.

Id. at 8 (emphasis added) (ellipses in original).  Plainly, the Corps has no mandatory duty

to issue JDs; the statutes and regulations include no mandatory language, and the relevant

guidance explicitly states that the act is discretionary.  Like the statutory language the

Fourth Circuit analyzed in Gonzales, "nothing in" the regulatory language here "requires

the agency to do anything." 985 F.3d at 366. Therefore, because the Corps "is <u>not</u> <u>required</u> to do something," the court "cannot compel [it] to act—let alone to act faster." <u>Id.</u> (emphasis in original).

Plaintiffs submit three arguments in opposition. First, they contend that the Corps does in fact have a nondiscretionary duty to issue JDs. Plaintiffs glean this duty from two sources—first, from a bald, contextless statement from the Supreme Court. In the introductory paragraph of his opinion in <u>Hawkes Co.</u>, Chief Justice Roberts summarizes the case as follows:

> The Clean Water Act regulates the discharge of pollutants into "the waters of the United States." Because it can be difficult to determine whether a particular parcel of property contains such waters, the U.S. Army Corps of Engineers will issue to property owners an "approved jurisdictional determination" stating the agency's definitive view on that matter. The question presented is whether that determination is final agency action judicially reviewable under the Administrative Procedure Act.

136 S. Ct. at 1811 (citations omitted). Plaintiffs seize on Chief Justice's Roberts comment that the Corps "will issue" JDs as evidence of a mandatory duty to do so. Plaintiffs' interpretation is a bridge too far. For one, Chief Justice Roberts' statement is clearly included for a narrative purpose—to provide a concise, plain-language summary of the nature of the proceedings before delving into meaningful legal analysis. If the Supreme Court intended to impose a duty upon the Corps not provided for in the regulations, it would surely do so with more force and clarity, and with more detailed, well-supported reasoning, not without any reasoning at all. Further, the Court's use of the words "will issue" is clearly meant to reflect the common practice of the Corps,

whose engineers routinely issue JDs upon request, and not some mandatory duty upon the Corps.[5]

Plaintiffs also argue that evidence of the Corps' nondiscretionary duty to issue JDs can be found in Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313 (4th Cir. 1988). There, the Fourth Circuit noted that "the Corps has the nondiscretionary duty to regulate dredged or fill material, and to fulfill that duty it must make reasoned wetlands determinations." Id. at 315. But again, plaintiffs divorce one line of case law from its context. In that case, the court reviewed a wetlands determination that the Corps actually made with respect to two parcels of land, finding the determination to be "arbitrary and capricious" because the decision was not well-reasoned. Id. at 316. Thus, the import of the Fourth Circuit's statement is that when the Corps makes wetlands determinations, it has a duty to make those determinations "reasoned." Id. at 315. The very next line of the case states, "The Corps has a mandatory duty to ascertain the relevant facts, correctly construe the applicable statutes and regulations, and properly apply the law to the facts." Id. at 315– 16. Thus, the duty the Fourth Circuit espoused in Hanson was the Corps' duty to ensure that its determinations are well-reasoned, not to issue wetlands determinations upon a party's request to do so. Thus, the court finds plaintiffs' argument for a mandatory duty unconvincing.

Next, plaintiffs seem to argue that the Corps has a duty to issue a JD upon request because it has historically been its practice to do so. See ECF No. 7 at 20–21 (listing examples in which the Corp recently responded to JD requests within 60 days). But

_____

[5] Again, plaintiffs' citation to Deerfield Plantation is misplaced. 801 F. Supp. 2d at 459. There, the Corps issued a JD; here, it has not.

plaintiffs point to no legal authority to support their contention that a nondiscretionary duty can arise vis-à-vis a longstanding practice, and the court's research similarly reveals none. The court agrees with defendants that "[t]he Corps' general practice of providing [approved] JDs as a service to the public does not amount to a mandatory duty[.]" ECF No. 11 at 10. The law is clear that an agency action cognizable under § 706 must be one the agency is "<u>required to take</u>." <u>Norton</u>, 542 U.S. at 63 (emphasis in original). The Corps' general practice of issuing JDs to requestors falls short of requiring it to so. In the absence of any authority requiring the Corps to issue JDs, the court will not assume the existence of a mandatory duty to do so.

Lastly, plaintiffs argue that the Corps' decision is reviewable under the APA because the Corps regularly issues JDs to applicants, and in declining to issue one in response to plaintiffs' request, the Corps has failed to "treat like cases alike." <u>Kirk v. Comm'r of Soc. Sec. Admin.</u>, 987 F.3d 314, 321 (4th Cir. 2021). There are two problems with plaintiffs' argument. First, the axiom of administrative law that agencies must "treat like cases alike" applies in the context of judicial review under § 706(2)(A). Before the court can conduct such review, it must be satisfied that the challenged agency action constitutes a "final agency action." As discussed above, there is no final agency action for plaintiffs to challenge, meaning that the court has no agency action to which it can apply the "like cases alike" doctrine. <u>Bennett</u>, 520 U.S. at 178. Second, the Corps has made clear that this is not a "like case." As the Corps outlined in its deferral letter, the properties plaintiffs want analyzed "are associated with an active [CWA] enforcement matter in the U.S. District Court for the District of South Carolina," which led the Corps to determine that "it would be inappropriate under the circumstances of this case to issue

an [approved] JD . . . at this time." ECF No. 1-4 at 1–2. Unsurprisingly, plaintiffs have presented no evidence that the Corps has issued JDs where the relevant property is under federal investigation and the relevant property owners are parties to an ongoing federal prosecution, as is the case here. Therefore, even if the court could apply the "like cases alike" doctrine, it wouldn't. Accordingly, the court grants defendants' motion to dismiss with respect to plaintiffs' second and third causes of action.[6]

### C. Count 4 – Indisputable Right and Clear Duty

In their fourth cause of action, plaintiffs seek a writ of mandamus compelling the Corps to issue an approved JD in response to their request. "The common-law writ of mandamus, codified in the All Writs Act at 28 U.S.C. § 1651, has long been reserved for 'extraordinary causes.'" South Carolina v. United States, 907 F.3d 742, 754 (4th Cir. 2018) (quoting Cheney v. U.S. Court for D.C., 542 U.S. 367, 380 (2004)). To receive relief in the form of a mandamus writ, "a plaintiff must demonstrate 'a clear and indisputable right to the relief sought' and show that 'the responding party has a clear duty to do the specific act requested.'" Id. (quoting Cumberland Cty. Hosp. Sys., Inc. v. Burwell, 816 F.3d 48, 52 (4th Cir. 2016)). For the reasons discussed above, plaintiffs have not demonstrated their right to an approved JD—let alone one that is clear and indisputable—nor have they shown that the Corps has a duty to issue an approved JD—

---

[6] Plaintiffs analyze the "TRAC" factors to argue that the Corps' issuance of an approved JD has been "unreasonably delayed." ECF No. 7 at 22–24 (citing Telecommunications Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984)). Because the court finds no nondiscretionary duty on behalf of the Corps, it need not reach this inquiry.

let alone a clear duty.  As such, plaintiffs are not entitled to mandamus relief.

Accordingly, the court grants defendants' motion in full and dismisses the action.[7]

### IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** the motion to dismiss and

**DISMISSES** the action.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 22, 2021**
**Charleston, South Carolina**

---

[7] There is some consternation among courts concerning whether the court should dismiss an action such as this one—i.e., an action that is not cognizable upon judicial review under the APA—under 12(b)(1) or 12(b)(6).  The Fourth Circuit affirmed a district court's dismissal of a similar claim based on lack of subject matter jurisdiction. Vill. of Bald Head Island v. U.S. Army Corps of Engineers, 714 F.3d 186, 197 (4th Cir. 2013) (dismissing APA claim for lack of subject matter jurisdiction under 12(b)(1)). More recently, the District Court for the Eastern District of Virginia dismissed a similar claim under the APA pursuant to 12(b)(6).  Versata, 959 F. Supp. 2d at 923 ("Whether Plaintiff has sufficiently pleaded that Defendant's decision constitutes a 'final agency action' is not a question of jurisdiction but is more appropriately disposed of under Rule 12(b)(6).").  There, the court reasoned that because "the APA does not confer jurisdiction upon federal courts," a plaintiff's failure to state a claim thereunder does not implicate the court's jurisdiction. Id.  Ultimately, determining the technical method by which the court dismisses the action is an entirely academic exercise, as the result—dismissal of the lawsuit—waits at the end of either path.  Finding the court's reasoning in Versata persuasive, the court finds dismissal under Rule 12(b)(6) more appropriate.